And Mr. Broussard, we'll hear from you. My name is Daniel Broussard, and I represent the plaintiff, Thomas Howell, who was a policeman with the Town of Ball, a police sergeant for five years, and was terminated by his chief. Mr. Howell was recruited by the FBI and actually paid money by the FBI to wear a wire to attend a town meeting where it was discovered that the town officials were committing FEMA fraud by putting numbers that they worked to clean up after Hurricane Gustav, and those numbers were false. Can I question you saying that he was terminated by Caldwell? I thought he was terminated by the agency. He was terminated by the board. What? He was terminated by the Board of Aldermen, the town, the Board of Aldermen. Right. But in Louisiana, under the Grant v. Grace case, which isn't in my brief, but it's a Louisiana Supreme Court case, saying under Section 423, the board cannot act unless it has a recommendation from an elected police chief. And in this case, the chief made a recommendation to the board. He said that Patrolman Howell had lost his temper and was disrespectful and insubordinate. What he didn't tell the board, and he didn't even tell Patrolman Howell, Howell asked him if there was an investigation, and he said he lied. He said, yes, there is an investigation, and that triggered Howell's reaction where the chief then recommended the termination. He did not even tell the town council what precipitated the confrontation in his yard, that he had in essence lied to Howell saying that he was investigating him when, in fact, that wasn't a fact. The evidence shows that Caldwell was a very good friend of the mayor, Hebron, who went to prison for four years, and that he had already announced when he was running that if he got to be chief of police, one of the things that he was going to do was get rid of Tommy Howell, who wore a wire against the mayor. During the time after he became chief, in a short time, he would make Mr. Howell open his shirt to see, are you wearing a wire, I don't trust you, and blah, blah, blah. The first claim that I made was under the False Claims Act, and Judge Trumbull and I went around about it. They amended the False Claims Act in 2009, and when they did, they omitted the word employer. Up to that point, you had an exclusive cause of action against the employer only. I argued that because the statute's words were clear, that you didn't need to go to the congressional record. However, Judge Trumbull didn't agree. I filed a motion of reconsideration. He turned that down. I certified it, and then I decided not to pursue it because we still had other issues and other defendants, and I foresaw that I didn't want to have a piecemeal appeal. In the meantime, this is the old saying, go with my prayers or answers. On March the 6th, this circuit rendered an opinion in the case of United States of America, X-Rail Bias, B-I-A-S, versus Tangible Whole Parish School Board. I just discovered this over the weekend. I've shown it to counsel this morning. In that case, Judge Southwick had an FCA case, and the question was there was a dismissal of a pseudo-employer. The guy worked for the ROTC, he worked for the Marine Corps, but the school board and the principal governed his activities. Judge Southwick, in a footnote, said, we rely on the plain language of the statute. When was this case decided? March the 6th. Just came out. We rely on the plain language of the statute, particularly the omission of the word employer to identify the defendant, and not the Senate report. She recognized that there was a split among all district courts and so forth, but this is her opinion. Then she looked at whether the relationship was between the school board and this ROTC officer. She said the most important component is the right of control. Well, obviously . . . It's a small point, but . . . Beg your pardon? It's a small point, but Southwick is a man. Leslie is a man, not her. Is that what you're saying? I didn't understand you. I think you referred to Judge Southwick as her. It is he. Oh, I'm sorry. I apologize. Small point. But you like his opinion, nonetheless. She said that the right of control was an important part, and she also determined that the Sarvaz-Oxley description of retaliation would apply in a false claims act. Obviously, in this case, the chief of police ran the police department, and he had the right of control over my client, Tommy Howell, and we think this case fits it as a glove as far as knocking out the motion to dismiss that Judge Trimble was wrong and that it should be remanded back in reverse on that point. Exactly what relief do you seek from us in this case? Beg your pardon? What relief do you seek here? Well, I seek a reversal of the decisions of Judge Trimble, both on the false claims act and also on the First Amendment retaliation claim. The issue on the First Amendment retaliation claim has to do with whether or not his wearing a wire for the FBI, being paid for it, was part of his ordinary duties as a town policeman at the town of Ball. If you look at Section 423, it cites what the chief of police has to do, which, in essence, the policemen have to do, and that's enforce state laws. That's to ordinances of the town. This was a separate investigation, an external investigation. Mr. Howe had no jurisdiction over federal income tax violations or EPA violations or any kind of federal claim like FEMA fraud, and I think this sort of brings into focus what the judge in Gibson on the remand in Gibson v. Kilpacker said the Supreme Court left open, which was what is ordinary duties, or is this within the scope of the ordinary duties? The other thing is that we feel the evidence showed that the town council acted as a cat's paw. There was cat's paw liability because they went off on the recommendation of the chief. Now, I recognize the case of Zamora v. the city of Houston, which is presently pending in the Supreme Court, and Zamora is cited at 798-5-3-326, where there was expression that whether or not this cat's paw theory would still be viable because of the but-for increase or hyphen burden of proof that the Supreme Court in the Nassar case said, but writs are pending on that. I don't think I have any problem with the but-for hyphen deal because there's no doubt about it that the chief of police is the one that recommended the termination. Now, there is a case, the Dupree case, and we have argued this with the judges and before you, where Judge Brown, I'm not sure if it was Judge Brown, it was the chief judge, Judge Higginbottom, and the cert was denied. And in that case, they indicated that if you showed a retaliatory amicus and if you met those requirements that she set forth, you could put liability on the person that made the recommendation, who's using the cat's paw. Now, they didn't do it in that case because they said the evidence wasn't met. I was arguing in my case that it was met. And the defense says that that's an outlier opinion of the Fifth Circuit. And, of course, Judge Trimble even mentioned there was troubling language in one of his opinions about it. But I was arguing that they, in essence, expanded the liability not only to the final decision maker but also to the person that was making the recommendation. As far as it being a clearly established, I think, the Stob case, all the cases, the Lane case, the Supreme Court has said that public corruption, that employees putting forth public corruption or public taking money, fraud, is clearly established. And the question only is if the public employee is acting within his ordinary duties or not. We feel the judge erred in granting the First Amendment qualified immunity to the town council. He did leave the town council, at least the town, as responsible under the False Claims Act as being the employer. He did dismiss the rest, even the town council, under the Qualified Immunity. It's my appreciation of the law that if there's retaliatory animus by the person recommending the determination, that's imputed to the final decision maker, and they're not allowed to get off on Qualified Immunity. But as the Dupree case said, even if the final decision maker is responsible, the person that made the recommendation. At least the way I read the case. And we don't know how you reconcile it other than you could say that it was dicta by the court and it's not persuasive precedent. So on your First Amendment claim, you want to remand your First Amendment claim against the town, right? The town. Against the town council individually. The town council individually. Yes. Okay. And what, and the evidence that you have in the record that the town council as individuals is responsible on the First Amendment claim is what? The chief, police chief Caldwell, had retaliatory animus towards my client and went into the hearing, did not tell the whole facts to the council, and the council rubber stamped as they do, because he's the elected police chief and accepted his version of it. Even though there's not evidence in the record that they're in on it or somehow? Well, there is some record about the town council. They were all friends with the mayor. They talked to the mayor before the mayor had resigned, but everybody was aware that my client had worn a wire for the FBI. Everybody was aware that the mayor had gone to prison for four years and had to pay a hefty fine. Okay. But in truth, I can't say that I proved that they had an animus towards my client. Okay. And what about the claims that you have against the mayor and the former mayor? Well, the mayor, the only thing I have against Mayor Tony is that he signed the recommendation with the chief. Okay. That's a, that's a. . . But you have no, what is the evidence that he was involved? He didn't vote. He didn't vote. Oh, he didn't vote. Oh, yeah, but he did sign, and that's shown on the records. He signed off on the chief's recommendation that Mr. Halvey terminate it, and Exhibits I and J of the records insert of the defendant show that. That's as far as. . . We had some testimony from Ms. Kristen Delaney that the former mayor prompted her to make false complaints to Caldwell, the police chief, on Mr. Howell. And she indicated that the mayor and Caldwell had discussed this, that she went in to make the complaint, and then she had her change of mind. But she was a girlfriend of the mayor, and the mayor had twisted her arm, so to speak, to get her to go in and make a false complaint against. . . But she didn't actually file any complaint, right? No. And also, the mayor was already gone by the time Howell was fired, so I don't know how he's in. . . That's right. I'm trying to figure out who might still be in the case if you were successful, and I'm not sure that he would be in the case under what you're telling me today and what I'm looking at in the records. I'll admit it's thin. It's a little thin as to him. But he is the one that had the retaliation animus towards my client. He was just not the mayor, but he transferred after Chief Caldwell, too. Thank you. Okay, Mr. Broussard, I believe your time is about up here. Yeah, thank you. I'm saving the rest for Ravel. I have very good counsel that are going to take a shot at me. Thank you. Kaiser, representing Daniel Caldwell, we'll hear from you next. Good morning, Your Honors. I am Randall Kaiser. I do represent Mr. Caldwell. I'd like to start by talking about the bias case that Mr. Broussard raised in oral argument. I just saw this this morning for the first time. I don't have a copy of it, but I shot a picture of the pertinent page, and I'd like to read you two sentences from it, about 3738. District courts, however, have cautioned that Congress did not intend to grant a federal right of action against anyone and everyone in amending that statute, so requiring some employment relationship acts as a continuing limiting principle. And Judge Southwick cites this case, Howell v. Town of Ball, in Judge Trimble's opinion, and then says, We agree and conclude that the 2009 amendment requires that courts expand the class of defendants beyond just employers, but not to interpret that expansion as a license to sue anyone. And in this particular case, it goes on in the opinion and talks about defendants. In those types of actions must be those with whom plaintiffs are employed, with whom they have contracts, or for whom there are agents. And although this is not in the brief, I would cite the court to revise Statute 42-1443.3, which provides under Louisiana law that the employer of an employee of a municipality is the municipality, which gets back to what Judge Reveley, you mentioned to Mr. Bruce, saw at an opening. My client, Danny Caldwell, didn't fire anybody. He made a recommendation, as he is supposed to do under Louisiana law, and he made that recommendation to the governing board, that would be the town council. I would certainly ask this court to look at pages 1447 through pages 1449 of the record, where Mayor Toney talks about what Mr. Caldwell did immediately after the incident involving Mr. Howell, where he called the chief, or the chief called the mayor, rather, explained to him what went on, and where the mayor told the chief, you can't fire him because he was hired by the council. It would take the council to do that. Then the mayor— Are you aware of our case Culbertson, our recent case Culbertson, that takes some issue with whether you have to be the final decision maker to be liable in the First Amendment context? I am not aware of Culbertson, Judge. I have found that City of Jackson case that we referenced in our 28J letter that came out two weeks ago that does talk about the having to be the final decision maker in order to have a First Amendment retaliation claim. Okay, because that case says that there might be circumstances where a subordinate acting out of animus may nonetheless be liable, even if they're not the final decision maker. So that's—and it goes back to some older cases and harmonizes the precedent in the area. And what's the date on that case, if I may ask Your Honor? It's 790 F. 3rd, 608 Fifth Circuit, 2015. So I'm just—that's of some concern. I do not—did not see Culbertson or do not recall Culbertson being mentioned in the recent City of Jackson case about liability attaching in a First Amendment false claims or a False Amendment—First Amendment, rather, retaliation case. I will certainly be willing to look at that and brief anything that the court would so require. I would just like to point out that we did give you the testimony of each and every person involved in this incident. And to a person, from Mayor Tony through all five of the council persons who voted, indicated that Mr. Caldwell never expressed any type of discriminatory animus towards Mr. Howell, never mentioned anything involving the FBI. And every decision was based solely upon Mr. Howell appearing in the chief's front yard, confronting the chief, and what the chief perceived to be insubordination. Now, that proof has been developed in this lawsuit. Yes, Your Honor. But there was no hearing before the council. They set the hearing, and he didn't show. Actually, Your Honor, he did come and he remained silent and did not speak. Given an opportunity, it was only after the decision and the vote was made by the council that he actually spoke about what he thought was going on. I see my time is running brief. I would certainly encourage the court to affirm the dismissals entered against Mr. Caldwell in this particular proceeding as they were all entered on a basis of law, not disputed facts. Judge Trimble found that Mr. Caldwell was not the final decision maker in this particular case. And as Beattie and the other authority from the Fifth Circuit indicates, when recommendations are made and somebody else has to make the vote or has to make the decision, that is germane as to not being a final decision maker. I appreciate the court's time. Any other? Could he be seen as having animus based upon his behavior in the work scenario where he's coming up to him and making him take his shirt off and that all these other things could be seen as leading up to just the overall animus that he has for this gentleman? I don't believe so, Your Honor, in this particular instance because he had no way to control the actual termination. I'm not saying did he terminate and whether he's the final decision maker. I'm asking whether he had any animus, discriminatory animus. I don't believe that that shows any discriminatory animus because I believe the record likewise shows that Mr. Howell was telling people about his involvement in the particular incident that led to the FEMA fraud charges against him. I was wondering if a jury could find there's discriminatory animus based upon his decision to tell him that he can't trust him and it worked to make him take off his shirt in front of people. It just seems those are unusual things to be happening in work, don't you think? It might be unusual, but even if the animus did exist, that animus under their theory would import to the final decision maker and Mr. Caldwell's not the final decision maker. And I know you've hit on that point very well. Thank you, Your Honor. I appreciate y'all's time. Thank you very much, Mr. Keiser. Mr. Thomas, representing Hebron. Good morning, Your Honor. My name is Scott Thomas. I represent former Mayor Roy Hebron in this matter. Judge Elrod, you brought up a couple of interesting points that I think are relevant here for purposes of Mayor Hebron, and I guess I'll just say simply this. When all of this was going on, he had resigned. He had already been sentenced. He's gone. He's not a part of the day-to-day operations of the town of Ball in any way whatsoever. Well, opposing counsel said the case against your client's thin. And I think it actually doesn't exist. I think it's beyond thin. Simply, Mayor Hebron wasn't a part of this anymore. The allegations against Mayor Hebron are essentially that people he had worked with for a very long period of time are his friends, that they knew one another, but that he had the opportunity not only to depose all of them, but to depose the mayor himself. And after all that was said and done, there's still nothing there. There's nothing there to show that the former mayor did anything to try to terminate this individual. In fact, the only thing he comes up with is the testimony of Ms. Delaney, who is a spurned lover, allegedly, of not only the mayor, but apparently Mr. Howell as well. And even in that circumstance, by her own admission, she didn't move forward with it. So whether she can be believed or not, the fact of the matter is that she made no complaint to try to further this alleged conspiracy, and that's it. And that doesn't take into consideration the fact that, for our purposes, the conspiracy argument, I would contend, was waived back in December of 2012 when it was certified for appeal, and he never took it up. How big is the town of Ball? Oh, it's very small, Your Honor. I apologize for not knowing the actual— Well, I mean, are we talking about 200 or 2,000, four people? I was about to say I think it's 3,000 to 4,000, Your Honor. Oh, 3,000 to 4,000. Yeah. A lot of things going on. It's an interesting place, Your Honor. I don't know how—is there some authority for the proposition that something's waived if it's not taken up as soon as it's certified as opposed to— why can't you just keep it in the bundle with the rest of it? I understand the argument, but I would also point out that I don't think he really briefs it for purposes here. Yeah, but I don't know that you need that salient legal point to prevail today, and I don't think that you have authority for that, do you? I do not off the top of my head, Your Honor. Back to the other portions of it. Clearly, former Mayor Herum was not a final decision maker. He wasn't a part of the conversation whatsoever. And to the cat's paw argument, I believe that Mr. Broussard has already said in his argument today that that doesn't relate to my client either. So for purposes of that, unless there are further questions, I'll allocate the rest of my time while actually it's up. Thank you, Mr. Thomas. All right. Mr. Rabelais. Ms. Rabelais. Good morning, Your Honors. Joy Rabelais here for the Town of Ball, former Mayor Tony, the older men and older women who are Mr. Robertson, Ms. Bishop, Mr. Giddings, Ms. Poteet, and Ms. Covington. With regards to abandoned claims, Your Honor, we'd like to assert that the district court himself, that Judge Trimble ruled that the conspiracy claims were abandoned because they were not briefed. There's an attempt in the brief here to bring up conspiracy only in the sense of Monell on page 51 of the plaintiff's appellate brief, but it's not really further developed, and as you all know, anything that's not briefed is waived. Plus, it can't be resurrected on appeal if it was abandoned in the district court. Likewise, the 14th Amendment claims, Judge Trimble declared as abandoned, so we'd like to say that those cannot be resurrected here as well. With regards to the 2009 amendment to the whistleblower statute, this is pretty much res nova except for the case that Mr. Broussard just pointed out to you all. There's two footnotes that I think that the court should look at in the biased case. Footnote two admits that this case does not reach the issue of whether the 2009 amendment creates individual liability for supervisors. Okay, the Board of Aldermen and Women. They weren't supervisors, but in this instance, they were the final decision makers. The town is the employer. I don't believe that even if this honorable court were to say that, yes, you can sue individual people under the False Claims Act, that there was any evidence put forth about any of the older men or women or the former mayor, Tony, who didn't even have a vote in the termination, that would show that they had a retaliatory animus or that they were discriminating against Mr. Howell in any way. As such, I believe that the individual claims against those individuals should be affirmed. Footnote three is also interesting. Footnote three acknowledges that the Cats bought the area of liability has never been held applicable in a False Claims Act in this circuit. I think the First Amendment claims and the False Claims Act claims kind of merge and blend a good bit because of what we're trying to say and do, although our laws and our cases do keep them separate. The fact, I think, that this circuit has never acknowledged Cats bought the area is important to my cross appeal for the town of Ball. You've never acknowledged Cats bought. That's what footnote three says, that it has not acknowledged Cats bought in a False Claims Act case. Not False Claims Act. Yes, ma'am. But I think that's important for my cross appeal because the judge denied the summary judgment on Whistleblower saying there should have been an investigation. Okay, let's investigate. Assume all the facts is true. He had to show if he was wearing a wire. He was told he wasn't trusted. From the time that Chief Caldwell came into office in October of 2010. Are you talking about the denial of summary judgment? Yes, ma'am, on my cross appeal. Okay. How do we even have jurisdiction over your cross appeal? There's pending claims. Because the judge certified all of the rulings as immediately appealable, and I took an appeal from that, Your Honor. He certified all of the rulings. It's in the same memorandum ruling as the branding of the dismissal and the other claims. And what is your cross appeal? The denial of the summary judgment for the town of Ball for the whistleblower claim, Your Honor. He certified all of the claims that he had denied. What did he retain? He certified all the rulings. He pointed to all the rulings. What did he retain? What issue remained alive after he had finished? After the dismissal of the claims was the whistleblower claim, Your Honor, against the town of Ball solely. You can't, even if it appears that the district court certifies a judgment that includes a summary judgment denial, because that's not a final disposition of that claim, it can't be included. Okay. If you go to Supreme Court President Curtis Wright, and we have an unpublished opinion, Kermer v. Goodyear-Tyre, that discusses that, I don't see how we have jurisdiction over that claim, even if it's purported to be wrapped up with everything else, because there is no final disposition of that claim. And you agree with that, that there's no final disposition of that claim. Correct. It was not a final disposition. A certification of a non-final thing, we don't have jurisdiction in the middle of the case. Let me go ahead and address the other issues, Your Honor, with regards to the amendment to 3730H. I don't believe it was meant to be expanded to every individual possible, and I think that this court and other courts have acknowledged that. There's been no allegations of retaliatory animus or discriminatory animus against the older men and women or former Mayor Tony. Mr. Broussard just admitted that. With regards to the First Amendment violation, it is a legal question. I think that the district court's analysis of the facts of this case in light of Lane, Garcetti, and Gibson were right on the mark. He looked at the different things. The duties of a police officer, prevent and detect crime. Whether it's a state statute or a federal statute or whatever, police officers cooperate in investigations with outside agencies all the time. Just like the Gibson case. The Gibson case, one of the things that this court has looked at was whether the person reported in the chain of command or went outside. Well, in Gibson, the boss was the one who was doing the wrongdoing, so the court said it made sense to go outside and not at the chain of command. Same thing here. Who was Mr. Howell going to report to even if he – because he did know about the fraud because he was a participant in the fraud. Perhaps that's why Mr. Deaton contacted him. It was part of his employment. It was all part of the employment. The access to the mayor. But it wasn't the ordinary kind of thing. Sir? It was not the ordinary. Well, you know, the word ordinary was inserted by Lane, and what – You're bound by ordinary. No, and what Gibson came back and said was we don't know what ordinary did to Garcetti. And so I think it's still in a state of flux as to what ordinary really means. So you are actually arguing that the law was not clearly established in your title of qualified immunity? Absolutely, Your Honor. But what about for the town? For the town, I can't argue that. I cannot argue that for the town, but for the individual older men and women who did make the vote on the First Amendment retaliation, I can. And with regards to Mr. Toney, Mr. Toney I don't think stays in no matter what. He didn't vote. He didn't do anything. So I think he's dismissed totally no matter what. But if – but Ball will be in on the First Amendment retaliation if it's not ordinary speech in the course of employment, ordinary duties, right? That would be correct, Your Honor, as the employer. But I do believe that the district court's analysis and Lane and Garcetti and Gibson all put this squarely within his duties. Why? Explain how this would be in his duty to be informing to the FBI about the work, about his experience in the city. It's cooperation with other law enforcement agencies. That's what police officers do. They prevent and detect crime, and they cooperate. He surely could have said no. He would have been indicted along with the rest of them, I'm quite sure. But this is part of what police officers do. Is it extraordinary that so many people in a small town were committing fraud upon the government? Of course. But that doesn't mean that it was outside of what his duties were. In other words, the FBI came to him and said, look, if you're aware of these wires, we'll cut you a deal. Is that what you're saying? I don't know what happened. Well, I thought you said that he would have been indicted. Well, he could have been. It is speculation on that point that he could have been indicted on that because he was a participant as well. That's not in the record. What's that? That he was going to be indicted. Oh, no, ma'am, that is not. That is not. But he did admit that he had participated in the fraud. He did admit that after everything was said and done and people started knowing about his participation, he was given money to relocate by the FBI. We do not know what the FBI or what the Department of Justice would or would not have done absent his cooperation. Where is there evidence in this record that Howell's normal responsibilities as a police sergeant included cooperating with federal law enforcement agencies, much less secretly cooperating with such agencies to uncover corruption among fellow police officers and supervisors? Where is that evidence in the record? The duty is jurisprudentially established. And there's no policy that says, yes, you have to cooperate with everything. This is just a group of people. The question is whether it's an ordinary duty. In other words, it seems to me that it's saying, look, if he's doing his regular sort of duties every day, day in and day out, the thing he does every day, that's one thing. But if he is called upon to do something that is particularly controversial, that puts him at odds with the rest of his colleagues, then that is not ordinary. That's not an ordinary part of his duties. And it seems to me where an individual is asked to cooperate with another law enforcement agency to get evidence against his own colleagues is not the ordinary kind of thing that he does in the day. Although you can say surely that it's ordinary for him to cooperate with other law enforcement officials. And even at that, that's okay. Gibson found that it was ordinary to cooperate with other agencies. Okay, well, you have a red light, and we will – Are you talking about the second Gibson? Yes, ma'am. It said the insertion of the word ordinary. We don't think it altered the rule in Garcetti, at least not in a way that can be said to be clearly established. Who else would he report to? He had to go outside the chain of command. So it was – they looked to the definition of what were the duties. And under Mississippi law, it's similar to Louisiana law, detection and prevention of crime. We're sure to take a very close look at it. And thank you, ma'am. Thank you. Thank you. Okay, Mr. Broussard, you have some time for rebuttal. Okay, thank you very much. That completes the arguments that we have on the oral argument calendar.